## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

SHAYLA JOHNSON, Individually; and,
as natural mother and Personal Representative of      CASE NO._____
the Estate of M.S., a Deceased Minor            HON._____
Plaintiff,

v.

MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES;
STATE OF MICHIGAN; and,
GRETCHEN WHITMER, Governor of Michigan, in her official capacity;
ELIZABETH HERTZEL, Director of Michigan Department of
Health and Human Services in her official capacity;
and, DEMETRIUS STARLING, Director of the Michigan Department of
Health and Human Services' Children's Services Administration,
in his official capacity; and JOHN DOES 1-5; jointly and severally,

Defendants.
_____

Attorney for Plaintiff:

**DAVIS LAW GROUP**
**Maurice Davis, Esquire**
**Michigan Bar No. P76203**
**27600 Northwestern Hwy, Suite 215**
**Southfield, MI 48034**
**(248) 469-8501 Phone**
**maurice@michigancriminallawyer.com**

**RAND LAW, LLC**
**Jasmine Rand, Esquire**
**Florida Bar No.: 77047**
**2525 Ponce de Leon Blvd., Ste. 300**
**Miami, FL 33134**
**(706) 424-1027 Phone**
**jasminerand@gmail.com**
**Attorney Pro Hac Vice**

## COMPLAINT

There is no other pending or resolved civil action arising out of the same transaction or occurrence.

**COMES NOW**, Plaintiff SHAYLA JOHNSON, Individually; and, as natural mother and Personal Representative of the Estate of M.S., a Deceased Minor, Plaintiff, and sues MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES; STATE OF MICHIGAN; GRETCHEN WHITMER Governor of Michigan, in her official capacity; ELIZABETH HERTZEL, Director of Michigan Department of Health and Human Services in her official capacity; and DEMETRIOUS STARLING, as Director of the Michigan Department of Health and Human Services' Children's Services Administration, in his official capacity; and, JOHN DOES 1-5; jointly and severally, Defendants; and in support thereof alleges as follows:

## INTRODUCTION

1.      This case arises out of the wrongful death of two-year-old minor child M.S. while in the custody of the MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES, on or about November 26, 2021.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action under the provisions of Title 28 of the United States Code §§ 1331 and 1343; 42 U.S.C. § 1983; pursuant to the Fourteenth Amended of the United States Constitution for alleged violations of due process including the right to be free from the infliction of unnecessary harm to children in state-regulated foster homes and the right to be free of racial discrimination pursuant to the Equal Protections Clause based, both Constitutionally protected rights; and pursuant to 42 U.S.C. § 1981 for alleged racial discrimination in the making and enforcement of a contract.

2

3.      Each and every act of Defendants, as set forth herein, were done by those

Defendants under the color and pretense of the statutes, ordinances, regulations, laws, customs,

and usages of the State of Michigan, and by virtue of, and under the authority of, each individual

Defendant's employment / contractual relationship with the State of Michigan.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the

Defendants are sued in their official capacities and perform their official duties by and through

offices within the District and thus reside therein, and a substantial part of the events and

omissions giving rise to the claims herein occurred in this District.  The named Plaintiff resides

in this District.

5.      The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars,

exclusive of costs, interest, and attorney fees.

### PARTIES

6.      Plaintiff SHAYLA JOHNSON is the natural mother of M.S., deceased; and is the

lawful Court appointed Personal Representative of the Estate of M.S., and resides in Davison,

Genesee County, Michigan.  Upon information and belief, the MICHIGAN DEPARTMENT OF

HEALTH AND HUMAN SERVICES, placed minor child M.S. in foster care in Lapeer and/or

Genesee County, Michigan; and the incident occurred in Lapeer and/or Genesee County,

Michigan

7.      Defendant Michigan Department of Health and Human Services ("MDHHS") is

the agency designated as the single state agency responsible for administering and implementing

the State's foster care program; and supervising and overseeing Michigan's Children's Services

Administration and Child Protective Services.  Defendant is a recipient of Federal funding to

assist in operating its foster care system.  Defendant MDHHS enters into a contract with the

Federal government to receive funds and provide for children in foster care, and Defendant

MDHHS entered into a contract with Defendants JOHN DOES 1-5 to provide for the care of

foster children including Plaintiff's decedent M.S.

8.      Defendant STATE OF MICHIGAN is responsible for supervising and operating

and ensuring compliance with State and Federal law of the Defendant Michigan Department of

Health and Human Services, Child Services Administration, and Child Protective Services; and

is responsible for ensuring the protection of children it takes into its custody through its foster

care program.  Defendant is a recipient of Federal funding to assist in operating its foster care

system.  Defendant STATE OF MICHIGAN entered into a contract with the Federal government

to receive funds and provide for children in foster care, and Defendant STATE OF MICHIGAN

entered into a contract with Defendants JOHN DOES 1-5 to provide for the care of foster

children including Plaintiff's decedent MS.

9.      Defendant GRETCHEN WHITMER is the Governor of the State of Michigan,

and is being sued in her official capacity.  Under Article V, Section 8, of the Michigan

Constitution, she is charged with seeing that the laws of the State of Michigan are faithfully

executed.  Defendant Whitmer oversees all departments of the Michigan government, including

the Michigan Department of Health and Human Services ("MDHHS") and she appoints the

MDHHS director.  Defendant Whitmer oversees Child Services Administration, and Child

Protective Services; and is responsible for ensuring the protection of children it takes into its

custody through its foster care program.

10.     Defendant ELIZABETH HERTZEL is the Director of Michigan Department of

Health and Human Services and is being sued in her official capacity.  Defendant Hertzel is

responsible for implementing and supervising Michigan's foster care program, Children's

Services Administration; and, Child Protective Services, and must ensure the programs are administered and implemented consistent with the requirements of Michigan and Federal law.

11.     Defendant DEMETRIOUS STARLING is the Director of the Michigan Department of Health and Human Services' Children's Services Administration, and is sued in his official capacity.   Defendant Starling was also responsible for Child Protective Services, the investigative arm of the Michigan Department of Health and Human Services' Children's Services Administration.

12.     Defendant JOHN DOES 1-5; are the foster parents whose home the minor child was placed into and/or the adults responsible for ensuring the supervision and safety of two-year-old minor child M.S., deceased.  Upon information and belief some of Defendant JOHN DOES 1-5 were residents of Lapeer, Michigan.

13.     Defendants are sued jointly and severally.

## FACTUAL ALLEGATIONS

14.     Plaintiff's decedent M.S. was born to her mother Plaintiff Shayla Johnson on November 4, 2019, and was a child of African American descent.

15.     Defendant State of Michigan by and through its MDHHS removed two-year-old M.S., Plaintiff's Decedent from her family home and placed her into the jurisdiction, custody, and care of the State of Michigan by and through its MDHHS agency.

16.     Defendants State of Michigan, Governor, MDHHS, Whitmer, and Starling are responsible for ensuring the safety and protection of children it takes into State custody and places into foster care, are responsible for properly screening foster homes and foster parents prior to placement, are responsible for monitoring and supervising a child after the child has been

placed; and, are responsible for conducting investigations to ensure children are safe in foster care.

17.     Upon information and belief Defendants State of Michigan, Governor, MDHHS, Whitmer, and Starling failed to properly screen, train and/or supervise Defendants John Does 1-5 prior to placing Plaintiff's decedent two-year-old into their care and custody and/or during her placement.

18.     Upon information and belief Defendants State of Michigan, Governor, MDHHS, Whitmer, and Starling failed to properly inspect, supervise, and/or monitor the foster care home that it placed Plaintiff's decedent two-year-old into prior to her placement and/or during her placement and/or placed too many children in the care and custody of two foster parents so they could not adequately supervise children.  Defendants failed to properly train the foster parents including on providing adequate supervision and providing emergency medical care to two-year-old M.S. prior to placing her in their home.

19.     Upon information and belief Defendants State of Michigan, Governor, MDHHS, Whitmer, and Starling failed to ensure that a caseworker visited Plaintiff's decedent the requisite two visits for the first two months she was in-custody and/or following a new placement, and/or to ensure that she was visited at least once per month by a caseworker thereafter.

20.     On or about November 26, 2021, the two-year-old deceased minor child was allegedly taking a nap, upon information and belief without a video monitor and/or failure to properly monitor and/or supervise the minor child.

21.     The two-year-old child allegedly ended up crawling out of the crib and a nightstand fell on her person and was left crushing her small body for an extended period of time causing her to asphyxiate and die.

22.     The nightstand was not properly affixed to any structure to prevent it from toppling onto the child and injuring her.

23.     There was no video to monitor the child or a sounding device installed in the crib to alert the foster parents when the child was awake and/or crawling out of the crib and/or if said video monitoring or auditory alarm system was installed it was not properly monitored by the foster parents.

24.     The sound of the nightstand falling on two-year-old child should have alerted the foster parents if she was being properly supervised and monitored.

25.     Death by asphyxia takes several minutes to occur and two-year-old child was left suffering and struggling to breath and suffering a medical emergency and was not discovered and ultimately died.  During this time M.S. suffered conscious pain and suffering.  Defendant MDHHS failed to conduct a proper investigation into the death of M.S.

26.     The State of Michigan's Department of Health and Human Services has a long history and/or pattern and practice and/or custom and policy of failing to protect children, failing to ensure the safety of children in State custody and/or unjustifiable deaths and injuries to minor children while in State custody, failing to properly supervise foster parents and foster homes, failing to conduct proper investigations into safety, injuries, and deaths of children; and has been subject to Court monitoring for more than a decade.

27.     In 2006 a New York advocacy group Children's Rights sued MDHHS on behalf of children in the foster care system, accusing the state of failing to keep children safe.  In a settlement agreement MDHHS agreed to a list of improvements it would make in the child welfare system and was subjected to Court supervision.  When MDHHS meets its requirements, the state can be removed from court supervision.  The Court appointed two

monitors Eileen Crummy and Kevin Ryan to watch over MDHHS' child welfare system since 2008 when the case settled and are charged with writing reports twice a year to update the court on MDHHS progress.  However, fifteen years after the settlement was reached MDHHS still fails to keep children safe, has not met the requirements of the settlement agreement, and is still subject to Court monitoring.

28.     In 2021 Crummy and Ryan's court monitoring report on MDHHS found that MDHHS continued to fail its children and does not ensure the safety of children placed into foster care.  The 2021 report, prepared by monitors as part of a lawsuit settlement, identified a series of problems, including the state's lax oversight of institutions contracted to provide foster care services and cases in which child maltreatment investigations were only partially completed. Monitors also highlighted cases in which children were improperly restrained, living in unsanitary conditions, left unattended after threatening to harm themselves and in other situations in which there are "unresolved risks of harm."  "The two court monitors' assessment of Michigan's child welfare system was described by a federal judge as "just devastating," despite a 15-year effort to reform the troubled system.  "It was really depressing to read how little the state has accomplished," said Judge Nancy Edmunds of the U.S. District Court of Michigan's Eastern District. "If anything, we've slipped backwards."

29.     In 2019 MDHHS had approximately five children die while in its custody.

30.     The State of MDHHS has a history of disparate treatment of African American children and injuries and deaths of African American children placing the agency on notice of constitutional violations of African American citizens' rights.  MDHHS has shown deliberate indifference to violations of African American children's' constitutional rights.

31.   Defendants failed to monitor/ensure the safety and welfare of its African American children at the same rate it monitors/ensures the safety of its White children, among other violations.

32.   For example, African American children account for approximately 31% of children in custody; however, they account for a disproportionate number of the in-custody abuse, neglect, and deaths.  Upon information and belief, in July 2015 an autistic and African American child Omarion Humphrey was left unsupervised and drowned in a lake, his whereabouts were unknown until his body was found days later.

33.   As a result of the above and the actions and inactions of Defendants as described above and below, Plaintiff's Decedent and the heirs at law to the Estate of Plaintiff's Decedent, suffered injuries and damages including, but not limit to, the following:

a.   Death;

b.   Compensation for conscious pain and suffering undergone by Decedent from the time of injury until Decedent's death;

c.   Loss of Decedent's society and companionship;

d.   Funeral and burial expenses;

e.   Medical and hospital expenses;

f.    Attorneys fees and costs

g.   Punitive damages

h.   Loss of financial support, and society and companionship of Shayla Johnson of her minor daughter Plaintiff's decedent M.S.

i.   Any other damages found fair and equitable under the circumstances and awarded by a judge and/or jury;

j.   Other damages and injuries revealed during discovery.

## COUNT I
## NEGLIGENCE- JOHN DOES 1-5 (Premise Liability and Negligent Supervision)

34.      Plaintiff incorporates paragraphs 1 through 33 as if fully stated herein.

35.      This is an action for negligence brought pursuant to the laws of the state of Michigan against Defendants John Does 1-5.

36.      At all material times hereto, Defendants John Does 1-5 owed a duty as the owner operators of the property to Plaintiff's decedent who was an invitee on the subject property at the time of the incident.  Defendants owed a duty to maintain the property reasonably safe condition, to exercise ordinary care to protect an invitee from unreasonable risks known to the possessor, or that should have been known to the possessor with the exercise of ordinary care; to warn invitees of dangers that are known, or that should have been known to the possessor unless the dangers are open and obvious; and, possessors have a duty to inspect the premises to discover possible dangers of which they are not aware.  Moreover, Defendants John Does 1-5 owed duties to ensure that any security measures undertaken as it was a foster care residence providing for Plaintiff's decedent's care and to ensure that the security measures were implemented in a reasonably safe manner, including but not limited to: ensuring that baby monitors including cameras and auditory alarm systems were installed, functioning, and were properly monitored, ensuring that furniture including the nightstand was properly affixed to a structure to prevent it from falling on Plaintiff's decedent a two-year-old child, ensure that the crib provided on the premise was safe for her use. Defendants breached the duties owed by failing to: maintain the property reasonably safe condition, to exercise ordinary care to protect an invitee from unreasonable risks known to the possessor, to warn invitees of dangers that are known; and/or failing to inspect the premises to discover possible dangers of which they are not aware, and/or failing to ensure that Defendants

promulgated proper policies and procedures to fulfill said duties and/or properly supervised and trained their employees to implement policies/procedures and/or security measures.

37.     Defendants John Does 1-5 as foster parents also owed a duty of reasonable care to Plaintiff's decedent as foster parents, including but not limited to, ensuring that they did not accept too many foster children at one time on the property to ensure each child had adequate supervision, to ensure M.S. was properly supervised and/or to seek emergency medical treatment for her. Defendants breached said duty of reasonable care by accepting too many children into their care rendering them unable to adequately supervise M.S., failing to adequately supervise M.S. while napping, failing to install monitoring camera systems and/or auditory sound alarms near her crib while she was sleeping, failing to adequately monitor cameras and/or auditory alarm systems, failing to respond to her medical emergency as she lay on the ground with a nightstand on top of her asphyxiating her for several minutes.  Defendants John Does 1-5's breached the duties owed and actually and proximately caused the death of M.S. and caused her and her mother injuries and damages for which Defendants' are liable.

38.    As a direct and proximate result of Defendants John Does 1-5's collective breach of duties, actions and inactions, Defendants actually and proximately caused Plaintiff's decedent M.S. to suffer severe physical injuries, psychological injuries, and emotional injuries and damages that are permanent, ongoing and will continue into the future.

39.     As a result of the above and the actions and inactions of Defendants as described above and below, Plaintiff's Decedent and the heirs at law to the Estate of Plaintiff's Decedent, suffered injuries and damages including, but not limit to, the following:

      a.  Death;

b.  Compensation for conscious pain and suffering undergone by Decedent from the time of injury until Decedent's death;

c.  Loss of Decedent's society and companionship;

d.  Funeral and burial expenses;

e.  Medical and hospital expenses;

f.  Attorneys fees and costs

g.  Loss of financial support, and society and companionship of Shayla Johnson of her minor daughter Plaintiff's decedent M.S.

h.  Any other damages found fair and equitable under the circumstances and awarded by a judge and/or jury;

i.  Other damages and injuries revealed during discovery.

## COUNT II
## GROSS NEGLIGENCE- JOHN DOES 1-5

40.    Plaintiff incorporates paragraphs 1 through 39 as if fully stated herein.

41.     This is an action for gross negligence brought pursuant to the laws of the state of Michigan against Defendants JOHN DOES 1-5.

42.    As stated above Defendants JOHN DOES 1-5 owed numerous duties to Plaintiff's decedent as property owners and/or possessors, and as foster parents; and Defendants' breached those duties actually and proximately causing Plaintiffs' injuries and damages: namely, the conscious pain and suffering and death of two-year-old minor child M.S.

43. Defendants' breaches of the duties owed to Plaintiff were so reckless that they demonstrated a substantial lack of concern for whether she suffered an injury; in particular, accepted too many children into their care to adequately supervise M.S., Defendants failed to affix

the nightstand that fell on M.S., failed to install cameras or auditory alarms and/or failed to monitor them, failed to adequately supervise M.S., were not within hearing distance of M.S. to respond to the sound of a nightstand falling on her body, failed to discover her for the extended period of time that it took for her to die of asphyxia, failed to call for emergency medical care.

44.   As a direct and proximate result of Defendants John Does 1-5's collective breach of duties, actions and inactions, Defendants actually and proximately caused Plaintiff to suffered severe physical injuries, psychological injuries, and emotional injuries and damages that are permanent, ongoing and will continue into the future.

45.    As a result of the above and the actions and inactions of Defendants as described above and below, Plaintiff's Decedent and the heirs at law to the Estate of Plaintiff's Decedent, suffered injuries and damages including, but not limit to, the following:

   a.   Death;

   b.   Compensation for conscious pain and suffering undergone by Decedent from the time of injury until Decedent's death;

   c.   Loss of Decedent's society and companionship;

   d.   Funeral and burial expenses;

   e.   Medical and hospital expenses;

   f.    Attorneys fees and costs

   g.   Punitive damages

   h.   Loss of financial support, and society and companionship of Shayla Johnson of her minor daughter Plaintiff's decedent M.S.

i.   Any other damages found fair and equitable under the circumstances and awarded

by a judge and/or jury;

j.   Other damages and injuries revealed during discovery.

**COUNT III**
**GROSS NEGLIGENCE- DEFENDANTS MDHHS, STATE OF MICHIGAN,**
**GOVERNOR WHITMER, HERTZEL, & STARLING**

46.   Plaintiff incorporates paragraphs 1 through 33 as if fully stated herein.

47.   This is an action for gross negligence brought pursuant to the laws of the state of Michigan against Defendants MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES; STATE OF MICHIGAN; GRETCHEN WHITMER Governor of Michigan, in her official capacity; ELIZABETH HERTZEL, Director of Michigan Department of Health and Human Services in her official capacity; and DEMETRIOUS STARLING, as Director of the Michigan Department of Health and Human Services' Children's Services Administration, in his official capacity.   Defendants MDHHS; STATE OF MICHIGAN; GOVERNOR WHITMER; HERTZEL, and STARLING, owed numerous duties to Plaintiff, breached said duties, and actually and proximately caused her injuries and damages.

48.   Defendants owed the duty to ensure the safety and protection of children it takes into State custody and places into foster care, are responsible for properly screening foster homes and foster parents prior to placement, are responsible for training foster parents prior to placement on proper supervision techniques and how to respond to medical emergencies, are responsible for monitoring and supervising a child after the child has been placed; and are responsible for conducting investigations to ensure children are safe in foster care.

49.     Defendants had prior notice of MDHHS' need to better protect children in Michigan to comply with the duties owed, and has a long history and/or pattern and practice and/or custom and policy of failing to protect children, failing to ensure the safety of children in State custody and/or unjustifiable deaths and injuries to minor children while in State custody, failing to properly supervise foster parents and foster homes, failing to conduct proper investigations into safety, injuries, and deaths of children; and has been subject to Court monitoring for more than a decade.  In 2006 a New York advocacy group Children's Rights sued MDHHS on behalf of children in the foster care system, accusing the state of failing to keep children safe.  In a settlement agreement MDHHS agreed to a list of improvements it would make in the child welfare system and was subjected to Court supervision.  When MDHHS meets its requirements, the state can be removed from court supervision.  The Court appointed two monitors Eileen Crummy and Kevin Ryan to watch over MDHHS' child welfare system since 2008 when the case settled and are charged with writing reports twice a year to update the court on MDHHS progress.  However, fifteen years after the settlement was reached MDHHS still fails to keep children safe, has not met the requirements of the settlement agreement, and is still subject to Court monitoring.

50.     In 2021 Crummy and Ryan's court monitoring report on MDHHS found that MDHHS continued to fail its children and does not ensure the safety of children placed into foster care.  The 2021 report, prepared by monitors as part of a lawsuit settlement, identified a series of problems, including the state's lax oversight of institutions contracted to provide foster care services and cases in which child maltreatment investigations were only partially completed. Monitors also highlighted cases in which children were improperly restrained, living in unsanitary conditions, left unattended after threatening to harm themselves and in other

situations in which there are "unresolved risks of harm.  "The two court monitors' assessment of

Michigan's child welfare system was described by a federal judge as "just devastating," despite

a 15-year effort to reform the troubled system.  "It was really depressing to read how little the

state has accomplished," said Judge Nancy Edmunds of the U.S. District Court of Michigan's

Eastern District. "If anything, we've slipped backwards."  In 2019 MDHHS had approximately

five children die while in its custody.

51.     Defendants' breaches of the duties owed to Plaintiff were so reckless that they

demonstrated a substantial lack of concern for whether she suffered an injury; in particular, after

prior notice and judicial oversight Defendants still fail to ensure the safety of the children it takes

into State custody.  Upon information and belief Defendants State of Michigan, Governor,

MDHHS, Whitmer, and Starling failed to properly screen, train and/or supervise Defendants

John Does 1-5 prior to placing Plaintiff's decedent two-year-old into their care and custody

and/or during her placement.  Upon information and belief, Defendants failed to properly

inspect, supervise, and/or monitor the foster care home that it placed Plaintiff's decedent two-

year-old into prior to her placement and/or during her placement and/or placed too many children

in the care and custody of two foster parents so they could not adequately supervise children.

Defendants failed to ensure furniture in the home was properly affixed to the structure to avoid

toppling on top of the child including the nightstand, failed to ensure there were proper cameras

to monitor the child and/or auditory alarms to alert the foster parents when the child crawled out

of the crib, failed to adequately train the foster parents on how to supervise and monitor a two-

year-old child.  Upon information and belief Defendants State of Michigan, Governor, MDHHS,

Whitmer, and Starling failed to ensure that a caseworker visited Plaintiff's decedent the requisite

two visits for the first two months she was in-custody and/or following a new placement, and/or

to ensure that she was visited at least once per month by a caseworker thereafter.  Defendants breach of their duties actually and proximately caused the death of M.S. on November 26, 2021, when she crawled out of her crib and nightstand fell on top of her and she laid there for an extended period of time, with no supervision and no medical intervention and asphyxiated to death.  Defendants failed to conduct an adequate and proper investigation into the death of MS.

52.     As a direct and proximate result of Defendants collective breach of duties, actions and inactions, Defendants actually and proximately caused Plaintiff to suffered severe physical injuries, psychological injuries, and emotional injuries and damages that are permanent, ongoing and will continue into the future.

53.     As a result of the above and the actions and inactions of Defendants as described above and below, Plaintiff's Decedent and the heirs at law to the Estate of Plaintiff's Decedent, suffered injuries and damages including, but not limit to, the following:

    a.  Death;

    b.  Compensation for conscious pain and suffering undergone by Decedent from the time of injury until Decedent's death;

    c.  Loss of Decedent's society and companionship;

    d.  Funeral and burial expenses;

    e.  Medical and hospital expenses;

    f.   Attorneys fees and costs

    g.  Punitive damages

    h.  Loss of financial support, and society and companionship of Shayla Johnson of her minor daughter Plaintiff's decedent M.S.

i.   Any other damages found fair and equitable under the circumstances and awarded

by a judge and/or jury;

j.   Other damages and injuries revealed during discovery.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 USC §1983 (DUE PROCESS CLAUSE AND EQUAL PROTECTIONS CLAUSE PURSUANT TO FOURTEENTH AMENDMENT)- ALL DEFENDANTS

54.      Plaintiff incorporates paragraphs 1 through 53 as if fully stated herein.

55.      This is an action for a violation of due process clause and the equal protections clause pursuant to 42 USC §1983 and the Fourteenth Amendment against Defendants MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES; STATE OF MICHIGAN; GRETCHEN WHITMER Governor of Michigan, in her official capacity; ELIZABETH HERTZEL, Director of Michigan Department of Health and Human Services in her official capacity; and DEMETRIOUS STARLING, as Director of the Michigan Department of Health and Human Services' Children's Services Administration, in his official capacity, and JOHN DOES 1-5.

56.      The Sixth Circuit has routinely held that the Fourteenth Amendment's due process extends the right to be free from the infliction of unnecessary harm to children in state-regulated foster homes, and it was a clearly established right at the time of the incident.  Moreover, children in foster care have the right to be treated equally without regard to race, and it was a clearly established right at the time of the incident.

57.      Defendants acts or omissions specifically described above were unreasonable and performed knowingly, deliberately, indifferently, intentionally, maliciously, and/or with gross negligence, and amounted to deliberate indifference to Plaintiff's Decedent's well-being, including

18

her right to be free from the infliction of unnecessary harm to children in state-regulated foster homes and her right to equality based on her race.  Defendants had subjective knowledge that the foster parents did not have adequate training on how to supervise a two-year-old or respond to a medical emergency, that the foster home had too many children living in it to adequately supervise M.S. and provide for her safety, that the home was not properly inspected prior to placement, that the home was not safe at the time of placement because the furniture was not affixed properly to prevent it from falling on the minor, there were not adequate video surveillance cameras in place or alarm devices to notify the foster parents when M.S. crawled out of her crib, and failed to ensure the foster parents were properly trained to respond a medical emergency.  Defendants' numerous failures were based in part on the child's race as an African American. As stated above, African American children are routinely treated with disparate treatment based upon race and disproportionately represent the injuries and deaths occurring in foster homes.  Moreover, Defendants subjective knowledge and deliberate indifference to the safety needs of children is well documented as it has been subjected to court monitoring for over fifteen years and failed to meet the safety standards expected by this District Court.  The conscious pain and suffering and death of M.S. is objectively serious.

58.    Defendants' conduct deprived two-year-old Plaintiff's Decedent of her clearly established rights, privileges, and immunities guaranteed him under the United States Constitution, specifically those set forth under the 14th Amendment.

59.    As a result of the above and the actions and inactions of Defendants as described above and below, Plaintiff's Decedent and the heirs at law to the Estate of Plaintiff's Decedent, suffered injuries and damages including, but not limit to, the following:

    a.  Death;

b.   Compensation for conscious pain and suffering undergone by Decedent from the

time of injury until Decedent's death;

c.   Loss of Decedent's society and companionship;

d.   Funeral and burial expenses;

e.   Medical and hospital expenses;

f.    Attorneys fees and costs

g.   Punitive damages

h.   Loss of financial support, and society and companionship of Shayla Johnson of her

minor daughter Plaintiff's decedent M.S.

i.    Any other damages found fair and equitable under the circumstances and awarded

by a judge and/or jury;

j.    Other damages and injuries revealed during discovery.


### COUNT V
### VIOLATION OF 42 U.S.C. § 1981 FOR RACIAL DISCRIMINATION IN CONTRACT-DEFENDANTS STATE OF MICHIGAN, MDHHS, AND JOHN DOES 1-5

60.       Plaintiff incorporates paragraphs 1 through 33, as if fully stated herein.

61.       Plaintiff's decedent is a member of the African American race within the meaning

of 42 U.S.C.A. § 1981.   At all times relevant, Plaintiff was a party in and/or beneficiary of, a

contractual relationship between the Federal government and Defendant STATE OF

MICHIGAN and/or MDHHS and a contract between Defendant STATE OF MICHIGAN and/or

MDHHS and Defendant JOHN DOES 1-5, for the purpose of her placement in foster care within

the meaning of 42 U.S.C. § 1981, as amended.

62.       Plaintiff was denied her full and equal benefits, privileges, terms, and conditions of

the contractual relationships enjoyed by non-Black foster children, wherein they were more

routinely placed in safe environments that did not pose a risk of harm and death, in violation of 42 U.S.C.A. § 1981, as amended.

63.     Defendant's STATE OF MICHIGAN, MDHHS', and/or JOHN DOES 1-5's disparate treatment and/or intentional discrimination against Plaintiff created a hostile environment, on the basis of Plaintiff's race under 42 USC § 1981.

64.     Defendant STATE OF MICHIGAN and MDHHS' had a history of the discriminatory acts directed at African American foster children and/or that it did not provide reasonable safety measures, properly screen, properly train foster parents, routinely placed too many children to safely supervise, failed to ensure the premise was safe, prior to placing an African American child in a foster home; said failure was at a higher rate than White children.  Moreover, African American children suffered serious injury and death at higher rate than White children while in foster care.  Despite having actual knowledge due to the statistical data, it maintained Defendants STATE OF MICHIGAN and MDHHS' did not take any action to prevent the discriminatory treatment of African American children, and failed to offer training or supervision or properly investigate violations to prevent violations of 42 U.S.C. § 1981.

65.     As a direct, legal, and proximate and/or "but for" cause of Defendant STATE OF MICHIGAN and MDHHS' discrimination in violation of Section 1981, Plaintiff suffered severe injuries and damages including conscious pain and suffering and death.

66.     As a result of the above and the actions and inactions of Defendants as described above and below, Plaintiff's Decedent and the heirs at law to the Estate of Plaintiff's Decedent, suffered injuries and damages including, but not limit to, the following:

     a.  Death;

b.  Compensation for conscious pain and suffering undergone by Decedent from the time of injury until Decedent's death;

c.  Loss of Decedent's society and companionship;

d.  Funeral and burial expenses;

e.  Medical and hospital expenses;

f.   Attorneys fees and costs

g.  Punitive damages

h.  Loss of financial support, and society and companionship of Shayla Johnson of her minor daughter Plaintiff's decedent M.S.

i.   Any other damages found fair and equitable under the circumstances and awarded by a judge and/or jury;

j.   Other damages and injuries revealed during discovery.

## **PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff SHAYLA JOHNSON Individually and as Personal Representative for the Estate of M.S., deceased, sues Defendants' MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES; STATE OF MICHIGAN; GRETCHEN WHITMER Governor of Michigan, in her official capacity; ELIZABETH HERTZEL, Director of Michigan Department of Health and Human Services in her official capacity; and DEMETRIOUS STARLING, as Director of the Michigan Department of Health and Human Services' Children's Services Administration, in his official capacity; and, JOHN DOES 1-5, for damages as set forth

herein in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: April 28, 2023.

Respectfully submitted,

_/s/ Maurice Davis_
Maurice Davis, Esquire
DAVIS LAW GROUP
Michigan Bar No. P76203
27600 Northwestern Hwy, Suite 215
Southfield, MI 48034
TEL: (248) 469-8501
maurice@michigancriminallawyer.com

_/s/Jasmine Rand_
**Jasmine Rand, Esquire**
FBN: 0077047
**RAND LAW, L.L.C.**
2525 Ponce de Leon Blvd., Ste. 300
Miami, Florida 33134
(305) 906-6400 Telephone
(305) 503-9235 Facsimile
_Attorney for Plaintiffs_