UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAYLA JOHNSON,

    Plaintiff,                                          Case No. 23-cv-11039

v.
                                                   Hon. Sean F. Cox
M.W. and A.W.,                                             United States District Court Judge

    Defendants.
_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION**
**TO DISMISS (ECF No. 46)**

In this civil action, Shayla Johnson pleads that the State of Michigan placed her daughter, M.S., with Defendants M.W. and A.W. as foster parents and that Defendants failed to prevent M.S.'s accidental death. Johnson seeks to recover from Defendants under state common law and under 42 U.S.C. §§ 1981 and 1983 in her individual capacity and as the personal representative of M.S.'s estate (the "Estate"). Defendants now move to dismiss.

Johnson lacks standing to maintain this action on her own behalf, so the Court shall dismiss any claims that Johnson brings in her individual capacity. The Court shall also dismiss the Estate's state-law claims because Defendants are entitled to parental immunity and the Estate's § 1983 claim because Defendants parents were not state actors. But the Estate's § 1981 claim survives because it pleads facts which, if true, would establish that Defendants interfered with M.S.'s contractual rights on account of her race.

**BACKGROUND**

M.S. was a black child whom the State of Michigan placed with foster parents, Defendants M.W. and A.W., in 2019. In 2021 when M.S. was two years old, a nightstand fell on

1

her while she was taking a nap in Defendants' home and she suffocated to death. This action against Defendants by M.S.'s biological mother, Shayla Johnson, in her individual capacity and on behalf of the Estate, followed. The operative (amended) complaint seeks damages for Defendants' alleged negligence (Counts I and II) and violations of 42 U.S.C. §§ 1983 (Count III) and 1981 (Count IV) and additionally states that Johnson brings this action "[i]ndividually."[1] (ECF No. 34, PageID.219). Defendants now move to dismiss.

Johnson filed the Complaint through counsel, but that counsel later moved to withdraw. Defendants then filed the instant motion to dismiss, and the Court granted Johnson's counsel's motion to withdraw. The Court also ordered Johnson to obtain new counsel on or before January 28, 2025, and held the instant motion in abeyance until that date. Johnson has yet to obtain new counsel and is therefore *pro se* in this action. The Court also ordered Johnson to file any response to the instant motion on or before February 21, 2025, but Johnson never filed any response. The Court now resolves the instant motion without oral argument pursuant to Local Rule 7.1(f)(2).

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[1] The original complaint brought claims against the State of Michigan, the Michigan Department of Health and Human Services, and several state officials, but the Court dismissed those claims. (ECF No. 20).

## ANALYSIS

**I.  Johnson's Claims**

As a preliminary matter, Johnson pleads that she brings this action on behalf of the Estate *and* herself.  But Johnson does not allege facts which, if true, would show that she suffered any injuries in fact.  Johnson alleges that Defendants breached common-law duties they owed to M.S. (Counts I and II); violated M.S.'s constitutional rights (Count III); and interfered with M.S.'s contractual rights on account of her race (Count IV).  But these allegations only concern violations of *M.S.*'s legally protected interests, and not Johnson's.  It follows that Johnson lacks standing to maintain this action in her individual capacity.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (explaining that "the irreducible constitutional minimum of standing" requires "an 'injury in fact,'" *i.e.*, "an invasion of a legally protected interest").

**II.  The Estate's § 1983 Claim**

To prevail on its § 1983 claim (Count III), the Estate must prove that Defendants "deprived [M.S.] of a right, privilege, or immunity secured by the Constitution or laws of the United States" while they were "acting under color of state law."  *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).  The Estate claims that Defendants violated M.S.'s rights to be free from the infliction of unnecessary harm in a state-regulated foster home and to equal protection of the laws.  But the Estate alleges no facts which, if true, would show that Defendants acted under color of state law.

Whether Defendants acted under color of state law turns on whether their alleged misconduct "may be 'fairly attributable to the state.'"  *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  But courts in this Circuit have repeatedly held that physical injuries to foster children caused by their foster parents are not fairly attributable to the state under § 1983.  *See, e.g.*, *Brown v. Hatch*, 984 F.

3

Supp. 2d 700, 707–09 (E.D. Mich. 2013); *Abessolo v. Smith*, No. 11-cv-680, 2012 WL 668773, at *7 (S.D. Ohio Feb. 29, 2012); *Lintz v. Skipski*, 807 F. Supp. 1299, 1305–07 (W.D. Mich. 1992); *accord Leshko v. Servis,* 423 F.3d 337 (3d Cir. 2005); *Milburn ex rel. Milburn v. Anne Arundel Cnty. Dep't of Soc. Servs.*, 871 F.2d 474 (4th Cir. 1989). The Estate accordingly fails to plead a § 1983 claim.

### III. The Estate's § 1981 Claim

The Estate brings a § 1981 claim (Count IV), and that statute states in relevant part that "[a]ll persons" shall "have the same right" of "enjoyment of all benefits, privileges, terms, and conditions of [a] contractual relationship" that "is enjoyed by white citizens." § 1981(a), (b). And § 1981 prohibits "nongovernmental discrimination" as well as "impairment under color of State law." § 1981(c). Here, the Estate alleges that M.S. "was a party in and/or beneficiary of[] a contractual relationship between the Federal government and Defendants A.W. and M.W. for the purpose of her placement in foster care." (ECF No. 34, PageID.230). The Estate further alleges that Defendants denied M.S. the benefits of this contract on account of her race.[2]

Generally, a plaintiff "must initially identify an impaired 'contractual relationship' under which the plaintiff has rights" to plead a § 1981 claim. *Domino's Pizza*, 546 U.S. 470, 470 (2006) (citation omitted) (quoting § 1981(b)). Here, the Estate identifies such a contractual relationship: a foster-care contract between Defendants and the Federal Government that M.S. was a party to or beneficiary of. Defendants nonetheless maintain that the Estate fails to plead the contractual-relationship element of its § 1981 claim. As support for their position,

---

[2] The Estate tries to make out the discrimination element of its § 1981 claim by alleging facts from which a jury could infer discrimination, and therefore *McDonald-Douglas*'s burden-shifting framework controls whether the Estate pleads that element. *See Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001). But the Court need not apply *McDonald-Douglas* to resolve the instant motion because Defendants only challenge whether the Estate pleads the contractual-relationship element of its § 1981 claim.

4

Defendants point to the facts that a plaintiff must prove to prevail "[i]n a § 1981 commercial establishment case," namely, that the plaintiff "sought to make or enforce a contract for services ordinarily provided by the defendant." *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001). Defendants conclude that the Estate's § 1981 claim fails because it does not plead facts showing that M.W. "sought to make or enforce a contract for services" that Defendants "ordinarily provided." (ECF No. 46, PageID.296).

But this is not a commercial establishment case; this is a case about foster-care services. Taking the Estate's allegations as true, Defendants contracted with the Federal Government to provide childcare services to M.S., M.S. was a party to or beneficiary of that contract, and Defendants impaired M.S.'s rights under that contract on account of her race. This conduct violates § 1981's plain text, and therefore the Estate ostensibly pleads a § 1981 claim. Defendants disagree and point to *House of Providence v. Meyers*, which involved a § 1981 claim stemming from the defendants' alleged interference with the plaintiff's efforts to construct and operate a foster home. 458 F. Supp. 3d 621 (E.D. Mich. 2020). This Court dismissed the *Meyers* plaintiff's § 1981 claim because it "d[id] not rely on any impaired contractual relationships." *Id.* at 632. Here, however, the Estate alleges that Defendants impaired a contract under which M.S. had rights. Defendants' challenge to the Estate's § 1981 claim fails.

**IV.    The Estate's Tort Claims**

The Estate advances three theories of state-law tort liability. *First*, that Defendants failed to reasonably mitigate the risk that M.S. would be injured by a dangerous condition on their land in breach of the duty they owed to M.S. as land possessors. *Second*, that Defendants failed to maintain property "security measures" in breach of the duty that they owed to M.S. as the owners

of the "foster care residence providing for [M.S.]'s care."[3] (ECF No. 34, PageID.224). And *third*, that Defendants failed to adequately supervise M.S. while she was napping in breach of the duty that they owed to M.S. as the adults responsible for her wellbeing. The Estate concludes that these breaches were negligent (Count I), that they caused M.S.'s death, and that the Estate is entitled to damages.

Defendants argue that they are entitled to parental immunity from liability for these breaches. As relevant to this argument, the Michigan Supreme Court in *Plumley v. Klein* partially abrogated the common-law rule that children cannot recover from their parents in tort. 199 N.W.2d 169 (Mich. 1972). *Plumley* held that "[a] child may maintain a lawsuit against his parent for injuries suffered as a result of the alleged ordinary negligence of the parent" unless "the alleged negligent act involves an exercise of reasonable parental authority over the child" or "the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." *Id.* at 172–73. The Michigan legislature has extended these parental-immunity principles to foster parents, Mich. Comp. Laws Ann. § 722.163 (West 2019), and Michigan courts recognize that "the first exception to the abrogation of parental immunity, the 'parental authority' exception, does apply to bar a claim of negligent parental supervision." *McCallister v. Sun Valley Pools, Inc.*, 298 N.W.2d 687, 691 (Mich. Ct. App. 1980).

Here, the gravamen of the Estate's tort claims is negligent supervision. The Estate pleads that Defendants were *in loco parentis* with respect to M.S. and that M.S. would not have been fatally injured while taking a nap if Defendants had properly supervised her. *See, e.g.*, *Wright v.*

---

[3] Whether and to what extent the Estate's second theory of tort liability implicates the duty it alleges Defendants owed to M.S. as possessors of land is unclear.

*Wright*, 351 N.W.2d 868, 869, 872 (Mich. Ct. App. 1984) (per curiam) (holding that "the gravamen of the negligence was the failure of the parents to adequately warn or take steps to prevent potential injury" where the seven-year-old party in interest had "accidentally shot herself with a revolver she found in an automobile"); *McCallister*, 298 N.W.2d at 689, 691 (holding that "[t]he gravamen of plaintiff's pleadings can only be construed as an action for negligent parental supervision" where the fifteen-year-old plaintiff alleged that he "dove into the deep end of the family swimming pool" and "suffered permanent paralysis from the neck down"). Defendants are accordingly entitled to parental immunity from the Estate's negligence claims.

The Estate also advances a separate claim for gross negligence (Count II). In Michigan, "[t]he term 'gross negligence' prescribes no standard of conduct" because "[t]here are no degrees of negligence" in Michigan. *Grabowski v. Seyler*, 246 N.W. 189, 190 (Mich. 1933). Rather, a plaintiff who proves gross negligence overcomes a defendant's claim that the plaintiff's contributory negligence bars his or her recovery in tort. *See Graves v. Dachille*, 43 N.W.2d 64 (Mich. 1950). Because the Estate cannot recover for Defendants' negligent supervision in the first instance, whether Defendants were grossly negligent is irrelevant.

## CONCLUSION & ORDER

Johnson brings claims against Defendants, but she lacks standing for those claims. The Estate also brings claims against Defendants, but Defendants were not state actors under § 1983 and they are entitled to parental immunity for failing to supervise M.S. But the Estate pleads facts which, if true, would show that Defendants violated M.S.'s contractual rights on account of her race. Accordingly, **IT IS ORDERED** that Defendants' motion to dismiss (ECF No. 46) is **GRANTED** to the extent that it seeks dismissal of the Estate's negligence (Counts I and II) and § 1983 (Count III) claims **with prejudice** and is **DENIED** in remaining part. **IT IS FURTHER**

**ORDERED** that any claims Johnson brings in her individual capacity are **DISMISSED without prejudice**.

    **IT IS SO ORDERED.**

<u>s/Sean F. Cox</u>  
Sean F. Cox  
United States District Judge

Dated:  March 7, 2025